UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CORIELLE JOHNSON #324642,

                    Plaintiff,                    Case No. 2:13-cv-260

v.                                      HON. ROBERT HOLMES BELL

WILLIAM JONDREAU, *et al.*,

                    Defendants.

_____/

### REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Corielle Johnson ("Plaintiff") pursuant to 42 U.S.C. § 1983. On August 18, 2014, the Court granted summary judgment to Defendant Zake. Docket #50. On August 20, 2014, the Court denied the motion for summary judgment based on lack of exhaustion filed by Defendants Jondreau, Neimi, Healey, Mitchell, McPherson, Negele and Gil. Docket #52.

The remaining defendants in this case are William Jondreau, Steven Neimi, Gina Healey, Unknown McPherson, Unknown Negele, Unknown Gill, Audrey Mills, and Dr. Aster Berhane.[1] Currently before the court are the motions for summary judgment filed by the remaining Defendants pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Docket #61, 80. In so, moving, Defendant Berhane states that he did not act with deliberate indifference, thereby precluding Plaintiff from asserting an Eighth Amendment violation against him. Defendants Mills and Gill

---

[1]On August 18, 2014, the claims against Defendant Joseph Zake were dismissed. Plaintiff had misidentified Defendant Zake, and had actually meant to sue Aster Berhane. Docket #50.

contend that Plaintiff has failed to establish a valid conspiracy claim, and that they did not violate Plaintiff's First and Eighth Amendment rights.  Defendants Jondreau and Neimi contend that Plaintiff has failed to establish a valid First Amendment retaliation claim.  Defendant Healey contends that she did not file a false report against Plaintiff, and that she did not interfere with Plaintiff's access to the courts.  Defendant McPherson contends that Plaintiff has failed to establish a First Amendment retaliation claim, and that he did not interfere with Plaintiff's access to the courts.  Finally, Defendant Negele contends that Plaintiff has failed to establish a valid First Amendment retaliation claim and a valid Fourteenth Amendment claim.  Plaintiff has not filed a response to either motion.  Upon review, I recommend that the motions for summary judgment filed by Defendants Jondreau, Neimi, Healey, McPherson, Negele, Gill, Mills, and Berhane be granted.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Emps.*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

On February 7, 2012, Plaintiff was transferred from Baraga Maximum Correctional Facility (AMF) to Marquette Branch Prison.  Plaintiff asserts that the impetus for the transfer was a kite he had written to the warden regarding what Plaintiff has referred to as, "continued constitutional violations."  On February 11, 2013, Plaintiff was transferred back to AMF.  Plaintiff alleges that multiple constitutional violations occurred upon his return to AMF.

In support of the motion for summary judgment, Defendant Mills alleges that on March 9, 2013, while handing out medication, Plaintiff handed her a medicine cup covered in semen and pubic hairs.  Plaintiff asserts that Defendant Mills is in error, and that the cup was actually covered in the grease and Vaseline he had just used on his hair.  Defendant Gill, who was escorting Defendant Mills, also believed that the cup was covered in Plaintiff's bodily fluids and told Plaintiff, "That's it, you'll never get this shit again!"  Defendant Mills shook her head and stated, "Yeah, fucking disgusting pig."  Plaintiff then threatened to sue both Defendants, and Defendant Gill retorted, "Now you're really not getting shit."

The following day, Plaintiff refused his medication at breakfast.  Shortly thereafter, Plaintiff blacked out in his cell.  When Plaintiff eventually regained consciousness, he asked Defendant Gill if he could receive medical treatment.  Plaintiff's request was denied.  Later that day, when it came time to receive his evening dose of Tylenol, Plaintiff was denied his medication.  Upon Plaintiff's protestation, Defendant Mills remarked, "So?  You should have thought of that yesterday, you sick fuck."  The following day, on March 11, 2013, Defendant Berhane cancelled Plaintiff's Tylenol prescription and, allegedly did so purely as a punishment for the medicine cup incident.

Defendant Berhane asserts that he cancelled Plaintiff's prescription based on Plaintiff's noncompliance with his medication regime, the lack of objective evidence showing that

Plaintiff suffered from headaches, and the lack of any recent complaints by Plaintiff regarding headaches. Plaintiff has a history of abusing medication. Therefore, it would be inappropriate to administer medications to Plaintiff for an illness that, by all objective and subjective standards, does not exist. Further, Defendant Berhane did not completely deny Plaintiff medical care, as he scheduled Plaintiff for an appointment with a medical provider to reassess and evaluate Plaintiff's health.

On March 20, 2013, Plaintiff was seen by a medical provider regarding his headaches. At this meeting, Plaintiff stated that the analgesics were effective. The medical records indicate that Plaintiff appeared threatening, visibly violent, and demanding. Nevertheless, Plaintiff was prescribed Excedrin for suspected migraines. A week later, his dosage was increased. Plaintiff later refused to take Excedrin, complaining of side effects. Plaintiff was then prescribed an alternative medication.

Defendant Berhane asserts that he did not act with deliberate indifference, and therefore did not violate Plaintiff's Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness

of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo*

*Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the delay

in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

 The subjective component requires an inmate to show that prison officials have "a

sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

 In the instant case, Plaintiff fails to establish the objective component of an Eighth

Amendment claim. Plaintiff's headaches are "non-obvious," and therefore, Plaintiff is required to

proffer medical evidence showing that he was harmed by a delay in treatment. *See Napier,* 238 F.3d

at 742. Plaintiff has not provided any such evidence. Plaintiff asserts the he suffered a blackout one

afternoon, but does not provide any proof that a blackout actually occurred, or that he suffered any

harm other than a single instance of unconsciousness. Further, Plaintiff's blackout occurred after

he refused to take his morning medication. So even if a harm had occurred, it was the result of his

own conduct.   Furthermore, Plaintiff has failed to allege any facts establishing the subjective component of a valid Eighth Amendment claim.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).

At no point did Defendant Berhane deny Plaintiff medical care, nor could his level of care be considered no treatment at all.  Defendant Berhane merely discontinued plaintiff's Tylenol prescription.  Plaintiff still had access to medical treatment via sick call.  Additionally, when Defendant Berhane ended Plaintiff's prescription, he also scheduled Plaintiff for a reevaluation, wherein Plaintiff received a new prescription.  Plaintiff does not assert that he suffered any harm from the nine days he went without medication.  Nor does he claim that after Defendant Berhane cancelled his prescription he was denied medical treatment.  Instead, Plaintiff argues that his Tylenol prescription should not have been discontinued in the first place.  Differences in judgment between

an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment

are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55

(6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).

Therefore, Plaintiff has failed to establish a valid Eighth Amendment claim against Defendant

Berhane.

Plaintiff claims that Defendants Mills and Gill conspired against him in order to deny

him medical treatment.  A civil conspiracy under § 1983 is "an agreement between two or more

persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir.

2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the

existence of a single plan, that the alleged coconspirator shared in the general conspiratorial

objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance

of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of*

*Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with

particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 (recognizing that allegations of conspiracy must be

supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a

"possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d

849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's assertion that a conspiracy exists is based on the brief conversation

Defendants Mills and Gill had outside his cell.  Assuming, *arguendo*, that Defendants created a plan

to deprive Plaintiff of a federal right, Plaintiff  still cannot show that a conspiracy existed.  The

*Hensley* test demands that Plaintiff suffer an injury, and as noted above, Plaintiff has shown none.

Plaintiff's loss of consciousness was the result of his refusal to take his medication on the morning of March 10, 2015.  It was not until later that evening that Defendants denied Plaintiff a dose of Tylenol.  Because Plaintiff failed to show that he was injured as a result of not receiving one dose of Tylenol, Plaintiff has failed to establish a valid conspiracy claim against Defendants Mills and Gill.

Plaintiff claims that his First Amendment rights were violated when Defendants Mills and Gill denied Plaintiff his medication out of retaliation for Plaintiff's threat to sue them. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff is able to satisfy the first prong of *Thaddeus-X*, as seeking redress through the courts is protected conduct.  *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).  However, Plaintiff has failed to establish the second prong.  The adverseness inquiry is an objective one, and it does not depend on how a particular plaintiff reacts.  The relevant question is whether the Defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at, 606 (emphasis in original).  Plaintiff was only denied a

single dose of Tylenol by Defendants Mills and Gill.  According to Plaintiff, this caused only temporary discomfort.  Because such an action would not deter a person of ordinary firmness from exercising their constitutional rights, Defendants Mills and Gill are entitled to summary judgment on Plaintiff's retaliation claims.

Plaintiff further asserts that Defendants Mills and Gill violated his Eighth Amendment rights by refusing him medication.  As stated above, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  Plaintiff's complaints are non-obvious, and therefore Plaintiff is required to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Napier.*, 238 F.3d at 742. Plaintiff has not proffered even a scintilla of medical evidence that shows he was harmed by missing a single dose of Tylenol.  Therefore, Plaintiff has failed to establish a valid Eighth Amendment claim.

Plaintiff claims that Defendants Neimi and Jondreau violated his First Amendment rights by placing him in segregation for purely retaliatory reasons.  On February 11, 2013, after a year long exodus, Plaintiff returned to AMF.  Plaintiff alleges that upon his arrival, Defendants Neimi and Jondreau took custody of Plaintiff and made remarks about the grievances Plaintiff had written during his previous stay at the facility.  Defendants then told Plaintiff that he was being sent to three block, a housing unit that Plaintiff believes is the worst in the facility.  Plaintiff asserts that Defendants Neimi and Jondreau intentionally displaced another inmate in order to put Plaintiff in a cell that was out of view of a camera so that correctional officers could perform "corrupt acts" on him.

As stated above, in order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X,* 175 F.3d at 394 (en banc). Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). In addition, transfer to administrative segregation or another prison's lockdown unit can be sufficient to constitute adverse action. *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010); *Thaddeus-X*, 175 F.3d at 398. Therefore, Plaintiff has satisfied the first two prongs of the test set forth in *Thaddeus-X.* However, Plaintiff fails to satisfy the third prong of the test because his transfer to administrative segregation was necessitated by his own conduct.

On February 5, 2013, Plaintiff's security classification was assessed. In such an assessment, the total number of misconduct violations a prisoner has received is tallied. The violations are assigned a point value and then are totaled. A prisoner's total score will determine his or her security level. Plaintiff received 48 misconduct violations during the relevant period, and once tabulated, Plaintiff received a score of 60. This score far exceeded the assessment's maximum score of 35, which placed Plaintiff as a level 5 threat. Level 5 prisoners are considered high risk inmates who are eligible for segregation. Therefore, Plaintiff's placement in segregation was the result of his own misconduct. Moreover, Defendants Neimi and Jondreau did not decide where Plaintiff would reside—that decision was made by Central Command. A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decision maker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d

295, 301 (6th Cir. 1999).  For the foregoing reasons, Plaintiff has failed to establish that an adverse action had been taken against him, and therefore Defendants Niemi and Jondreau are entitled to summary judgment on Plaintiff's retaliation claims.

Plaintiff asserts that Defendant Healey filed a false sexual harassment report against him in retaliation for his litigation activities.  Plaintiff claims that on February 12, 2013, Defendant Healey made rounds and collected legal mail.  When she approached Plaintiff's cell, Plaintiff attempted to hand her his outgoing legal mail and she stated, "You just aint gone [sic] let it go huh?" She then refused to take Plaintiff's mail, and allegedly, generated a false sexual misconduct report to justify her actions.  However, Plaintiff subsequently received a hearing on this misconduct and was found guilty.  The hearing officer found that the reason Defendant Healey refused to take Plaintiff's mail was because, when she approached his cell, he suddenly reached outside the cell and grabbed onto a food cart with one hand.  Plaintiff was using his other hand to masturbate, and refused to let go of the cart, stating " No, I'm not done.  I gotta get one off."

A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt.  *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action).  Plaintiff's misconduct report was reviewed by a hearing officer.  Plaintiff waived his rights to attend the hearing and did not dispute the allegations.  Upon review, the hearing officer found Plaintiff guilty of the charges against him, thereby barring Plaintiff from asserting a First Amendment retaliation claim against Defendant Healey.

Plaintiff claims that he was denied access to the courts when Defendant Healey refused to take his legal mail.  However, on February 12, 2013, Defendant Healey refused to take

Plaintiff's legal mail because he was masturbating in his cell.  Plaintiff states that he was attempting to send a time sensitive motion for reconsideration in the Western District of Michigan in Case No. 2:12-cv-205.  However, Plaintiff does not assert that his case would have turned out differently if Defendant Healey had taken his legal mail on that day.  Plaintiff was eventually able to send out his legal mail, and his motion was filed on February 25, 2013.  On March 20, 2013, the Court denied Plaintiff's motion on the merits.

In order for Plaintiff's claim to succeed, he must demonstrate that he suffered an actual injury to pending or contemplated litigation.  *Dellis v. Corrs. Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  Plaintiff's filing date may have been delayed, but in no discernable way did that impact the outcome of his motion, or his case in general.  Plaintiff has failed to demonstrate that he suffered an actual injury, and therefore he has failed to establish a valid access to courts claim.

Plaintiff claims that Defendant McPherson violated his First Amendment rights and interfered with his access to the courts.  Plaintiff asserts that on February 19, 2013, Defendant McPherson denied him a shower because another inmate spat on a correctional officer.  On February 20, 2013, Defendant McPherson again denied Plaintiff a shower.  Plaintiff claims that the second denial was purely retaliatory, as a result of Plaintiff filing a grievance on February 19, 2013.  Plaintiff further alleges that, on or about March 10, 2013, Defendant McPherson approached his cell yelling, "You motherfucker!  You didn't get your meds because they expired."  Later that day, Plaintiff received two grievances in the mail.  Plaintiff, however, was expecting a third piece of mail—a step two grievance regarding defendant McPherson.  Plaintiff then requested another step two grievance from the "coordinator."  On March 13, 2013, Plaintiff received a letter from the coordinator, which

stated that a step two grievance should have been included in his March 10, 2013, mail delivery. Plaintiff asserts that Defendant McPherson must have removed the step two grievance from his mail.

First, Plaintiff did not suffer an injury by being refused a single shower. Defendant McPherson never threatened to deprive Plaintiff of future showers. A single instance of being denied a shower is not objectively sufficient to deter a person of ordinary firmness from filing a grievance.

Next, Plaintiff fails to allege any facts in support of this claim that Defendant McPherson tampered with his mail. In fact, Plaintiff does not even allege that he witnessed Defendant McPherson tampering with his mail. Instead, he merely states that Defendant McPherson was the culprit. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009); *Twombly*, 550 U.S. at 555. However, even assuming Plaintiff could provide such evidence, Defendant McPherson still only denied Plaintiff a single piece of mail. Plaintiff does not assert that this mail was novel, or irreplaceable. Similarly, Plaintiff does not assert that, by being denied this piece of mail, he suffered an actual harm, or that his case was somehow prejudiced. Therefore, Defendant McPherson's actions were *de minimis,* and do not rise to the level of a constitutional violation.

Furthermore, Plaintiff's allegations that he was denied access to the courts does not amount to a constitutional violation. As stated above, in order to succeed on this claim, Plaintiff would need to show that he suffered an actual injury in his pursuit of a nonfrivolous legal action. *Lewis*, 518 U.S. at 351. Plaintiff has failed to allege such an injury. Therefore, Defendant McPherson is entitled to summary judgment on this claim.

Plaintiff claims that Defendant Negele violated his First and Fourteenth Amendment rights on Jan. 15, 2013.  Plaintiff claims that Defendant Negele was escorting him from a medical appointment to his cell when Defendant Negele asked, "Could you show me your dick, I heard it's huge?" Plaintiff denied the request, but over the next two weeks Defendant Negele would repeatedly inquire as to the size of Plaintiff's manhood.  Then, on January 22, 2013, Plaintiff claims he heard Defendant Negele "hassling" inmate Geter about his masturbating habits.  Defendant Negele allegedly called inmate Geter a "stupid fucking nigger."  Plaintiff then interjected, and told Defendant Negele that "you're a faggot and a racist don't ever talk to me again until you apologize to all of us people and you better hope if I ever see you I don't try to break yo jaw or stab yo [sic] racist ass." Defendant Negele responded, "your ass is mine, you wanna play that court shit, oh your mine."

Another incident occurred on January 25, 2013, while medications were being passed out.  Hoping to see Plaintiff masturbating, Defendant Negele attached the medical cart to Plaintiff's cell and handed him medication.  When it became clear that Plaintiff was not masturbating, Defendant Negele became irate and threw Plaintiff's mail on the cart, stating, "I shouldn't give you shit you masturbating nigger monkey."  It is unclear if Plaintiff was able to retrieve his mail from the cart.  Plaintiff asserts that Defendant Negele violated his First Amendment rights by threatening to deny Plaintiff his mail when he repeatedly refused to show Defendant Negele his penis.

As stated above, *Thaddeus-X* provides a trifurcated test to determine whether an action is considered retaliatory.  Plaintiff was exercising a constitutional right when he refused to masturbate in front of Defendant McPherson.  However, Plaintiff fails to establish that an adverse action was taken against him.  To the extent that Plaintiff is asserting that he was denied mail on a

14

single occasion, he has failed to show that he suffered any injury from this incident.  Moreover, being

denied mail for one day would not deter a person of ordinary firmness from exercising their

constitutional rights.   To the extent that Plaintiff is alleging that Defendant McPherson was

threatening to deny Plaintiff his mail at some point in the future, Defendant Negele's threat was *de

minimis*.

Plaintiff also claims that because of the racial nature of Defendant Negele's remarks,

his Fourteenth Amendment rights were violated.  The Equal Protection Clause of the Fourteenth

Amendment provides that a state may not "deny to any person within its jurisdiction the equal

protection of the laws," which is essentially a direction that all persons similarly situated should be

treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S.

432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with

a fundamental right or discriminates against a suspect class of individuals.  *Massachusetts Bd. of

Retirement v. Murgia*, 427 U.S. 307, 312 (1976).  As described in the foregoing, Plaintiff has failed

to present a claim that any of his fundamental rights have been abridged.

A claim that plaintiff was treated one way and everyone else was treated another way,

by itself, is not sufficient to state an equal protection claim.  *Newell v. Brown*, 981 F.2d 880, 887 (6th

Cir. 1992), *cert. denied*, 510 U.S. 842 (1993).  Rather, a plaintiff must show that he was victimized

by some suspect classification.  *Id*.  Absent some allegation or proof that the law was applied

differently to plaintiff because of race, gender, age, or some other improper classification, no equal

protection claim has been stated.  *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte,

J., concurring); *see also  Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991),

*cert. denied*, 503 U.S. 945 (1992) (a person's conduct is legitimate for purpose of the equal

15

protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination).

Plaintiff does not claim that the law was applied differently to him because he belonged to a protected class.  Instead, Plaintiff states that he was treated differently because Defendant Negele wanted to see his penis.  Plaintiff, therefore, has not stated a valid equal protection claim, at least in regards to Defendant Negele's alleged desire to see Plaintiff's genitals.  As to Defendant's use of racial slurs, a pattern of racial harassment involving racial slurs may violate the Equal Protection Clause.  *Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993).  However, the use of racial slurs, without harassment or some other conduct that deprives the victim of established rights, fails to state a claim for violation of the Equal Protection Clause.  *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Williams v. Kaufman Cnty.*, 86 F. Supp. 2d 586, 598 (N.D. TX, Feb. 7, 2000); *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D. N.Y., May 24, 1997).  Plaintiff has failed to establish that Defendant's racial slurs were coupled with some form of unconstitutional conduct.  Therefore, Plaintiff has failed to establish a valid equal protection claim.

For the foregoing reasons, I recommend that Defendants Jondreau, Neimi, Healey, McPherson, Negele, Gill, Mills, (Docket #80), and Berhane's (Docket #61) motions for summary judgment be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the

undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and

recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate

filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will

be required to pay the $455 appellate filing fee in one lump sum.


      /s/ TIMOTHY P. GREELEY
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated:   August 10, 2015


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of
service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections
and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely
objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638
F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).